1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9    DEMIAN TREVOR O'KEEFFE,

10             Plaintiff,                    No. CIV S-04-1695 WBS GGH PS

11        vs.

12   EDWARD S. ALAMEIDA, et al.,

13             Defendants.                   FINDINGS & RECOMMENDATIONS

14   _____/

15   I.  Introduction

16             Plaintiff is a former state prisoner proceeding pro se with a civil rights action

17   pursuant to 42 U.S.C. § 1983.  Presently before the court is defendants' summary judgment

18   motion filed April 10, 2006.[1]  On May 1, 2006, plaintiff filed an opposition to defendants'

19   motion.

20             In summary, plaintiff claims he was denied procedural due process when

21   defendants, who were associated with the then termed California Department of Corrections and

22   Board of Prison Terms, failed to give him notice that he had been retained on parole in lieu of

23   discharged such that he was not able to appeal his retention.  Plaintiff was allegedly oblivious to

24   the fact that he had a right to appeal any retention on parole.  When plaintiff was "unlawfully" on

25   _____

26        [1]  The motion was set for hearing on June 1, 2006, but was vacated after the court
determined that oral argument was unnecessary.

"extended" parole, he allegedly committed a petty crime which resulted in revocation of parole and a host of alleged misfortunes while he was re-incarcerated.  Plaintiff alleges that none of the misfortunes would have befallen him if he had not been on parole at the time of commission of the crime.  Although neither party briefs the parameters of the alleged liberty interest, defendants do not contest, at least on summary judgment, that the California procedures for discharge/retention of parole created a liberty interest, nor do defendants argue that the liberty interest was not violated.  Defendants only assertion for which they seek summary judgment is that the presently named defendants had nothing to do with the due process problems (and their sequellae) raised by plaintiff.

Plaintiff also alleges that because his parole was revoked, the lack of satisfactory medical care he alleges he received in prison may also be laid at the doorsteps of these defendants.

After carefully considering the record, the court recommends that defendants' motion be **granted.**

II.  Factual Background

Plaintiff is proceeding on the original complaint, after his amended complaint was stricken by order on October 12, 2005.  That order and findings and recommendations also disposed of defendants Alameida and Woodford.  Therefore, remaining defendants are Daly, Erkenbrecher, Stinson and Rimmer, all of whom have filed the instant motion.

Plaintiff alleges that on March 6, 2002, the date he would have been discharged, he did not receive a 12 or 24 month review despite having served 28 months of continuous parole.  (Compl. at 3.)  He was not notified of his right to these two reviews, nor was he informed of his right to appeal the decision to retain him on parole.  (Id.)  He claims that defendants Rimmer and Daly should have disclosed the full conditions of parole to him.  Plaintiff contends

\\\\\

\\\\\

the deception was continued through the actions of defendant Stinson[2]:

> who issued a Fax/Memo to do a discharge review recommending to 'retain' parolee if parolee due to discharge in 60 days. This same memo states to retain plaintiff without any show of cause for them to retain on parole as required by law. Karla Erkenbrecher - Interstate Agent of Record continued on with this violation as she was the Agent of record and was to do the 12th month discharge review or to iniate [sic] the process as written in the Director's Operations Manuel (DOMS) and the Parole Operations Manuel (POMS) [sic] ....

(Id. at 4.) The complaint further alleges that defendant Erkenbrecher filed a parole violation report for an incident which occurred after the date plaintiff would have been discharged off parole. As a result, plaintiff claims he was deprived of his due process and equal protection rights.

Plaintiff also alleges violation of the Eighth Amendment by virtue of the issuance of an arrest warrant for him which would result in his placement in prison with inadequate medical care. (Id. at 5.) The third claim alleges that plaintiff's parole revocation hearing violated his due process and equal protection rights because plaintiff was not allowed counsel despite making a colorful claim of innocence, that he had no witnesses because the notices to them were mailed the day before the hearing and received by the witnesses the day after the hearing, that plaintiff's wife called defendant Erkenbrecher to try to present documents at the hearing but this defendant told her not to bother because no one would look at them. (Id. at 6.) Plaintiff seeks money damages.[3]

II. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[2] The complaint incorrectly refers to defendant Stinson as defendant Stinton.

[3] Plaintiff's claim for injunctive relief was eliminated pursuant to his request on October 12, 2005.

1            Under summary judgment practice, the moving party

2    always bears the initial responsibility of informing the district court
    of the basis for its motion, and identifying those portions of "the
3    pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes
4    demonstrate the absence of a genuine issue of material fact.

5    Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

6    P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

7    issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

8    depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment

9    should be entered, after adequate time for discovery and upon motion, against a party who fails to

10   make a showing sufficient to establish the existence of an element essential to that party's case,

11   and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.

12   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

13   necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment

14   should be granted, "so long as whatever is before the district court demonstrates that the standard

15   for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

16   2553.

17           If the moving party meets its initial responsibility, the burden then shifts to the

18   opposing party to establish that a genuine issue as to any material fact actually does exist. See

19   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

20   (1986). In attempting to establish the existence of this factual dispute, the opposing party may

21   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

22   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

23   contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

24   106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is

25   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

26   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

1   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

2   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

4           In the endeavor to establish the existence of a factual dispute, the opposing party

5   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

6   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

7   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

8   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

9   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

10  56(e) advisory committee's note on 1963 amendments).

11          In resolving the summary judgment motion, the court examines the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

14  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

15  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

16  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

18  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

19  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

20  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

23  III.  Discussion

24          A.  Discharge From Parole

25          Plaintiff first vaguely claims that he was entitled to discharge reviews pursuant to

26  Cal. Penal Code § 3001which he did not get, and had he received them, he would have been

discharged from parole by operation of law on March 6, 2002.  Defendants have proven that the

discharge review did indeed take place, and plaintiff has produced no facts to dispute this.  See

Erkenbrecher Dec. at paras. 5 and 6.  Plaintiff may well not have been aware at the time that

these reviews were taking place, but this is a different issue.

In order to understand the due process issues, and later how defendants are

implicated or not, the liberty interest must be defined.

Cal. Penal Code § 3011 provides in pertinent part:

> § 3001. Discharge after certain periods of continuous parole; effect
> of violent felony conviction; time; retention on parole; applicability
> of 2005- 06 amendments.
>
> (a)(1) Notwithstanding any other provision of law, when any
> person referred to in paragraph (1) of subdivision (b) of Section
> 3000 who was not imprisoned for committing a violent felony, as
> defined in subdivision (c) of Section 667.5, has been released on
> parole from the state prison, and has been on parole continuously
> for one year since release from confinement, within 30 days, that
> person shall be discharged from parole, unless the Department of
> Corrections and Rehabilitation recommends to the Board of Parole
> Hearings that the person be retained on parole and the board, for
> good cause, determines that the person will be retained.
>
> (2) Notwithstanding any other provision of law, when any person
> referred to in paragraph (1) of subdivision (b) of Section 3000 who
> was imprisoned for committing a violent felony, as defined in
> subdivision (c) of Section 667.5, has been released on parole from
> the state prison for a period not exceeding three years and has been
> on parole continuously for two years since release from
> confinement, or has been released on parole from the state prison
> for a period not exceeding 10 years and has been on parole
> continuously for six years since release from confinement, the
> department shall discharge, within 30 days, that person from
> parole, unless the department recommends to the board that the
> person be retained on parole and the board, for good cause,
> determines that the person will be retained.  The board shall make
> a written record of its determination and the department shall
> transmit a copy thereof to the parolee.

Interestingly, notice of the decision is only required by the statute to be given to

the "violent" offender, and no notice is required to the non-violent offender.  It appears that the

crimes for which plaintiff was incarcerated and then on parole were non-violent, but whether true

1 | or not, this case is not affected by that fact.

2 |     Although the regulations governing the discharge/retain process cited by

3 | defendants have been repealed, 15 CCR § 3901.13.1, plaintiff has attached the newly numbered

4 | regulations, 15 CCR 2535.  The process evidently followed in this case is adequately set forth in

5 | In re Carr, 38 Cal. App. 4th 215, 45 Cal. Rptr. 2d 34 (1995):

> The Operations Manual (hereafter OM) for the Department of Corrections reflects the actual practices of the PHD. It requires that a "Discharge Review Report" be prepared at least 20 days before the end of a parolee's first year of continuous parole. (OM, § 81080.1.1.) In this report, the parole agent reviews relevant information and recommends discharge from or retention on parole. (OM, § 81080.1.2.) The report must then go to a unit supervisor, who decides to discharge or retain.
>
> If the supervisor decides to discharge, the review process ends and discharge becomes effective "30 days following completion of one year of continuous parole," and the "[p]arolee will discharge by action of law on date specified." (OM, § 81080.1.2, emphasis added; see OM, § 81081.1.1 ["By law" a parolee is discharged if the PHD does not order retention within 30 days after first continuous year on parole.].) However, if the parole agent's report or the unit supervisor recommends retention, the matter is submitted to the parole administrator for a decision, which again must be made within the 30-day period. ( Ibid.)
>
> In our view, section 3001(a), the pertinent Regulations, and the practice of the PHD as reflected in the Operations Manual indicate that parole for a parolee terminates by operation of law after the 13th month of parole unless the PHD takes action to retain the parolee. In In re Nesper (1990) 217 Cal.App.3d 872, 876, 266 Cal.Rptr. 113, the court so held.

20 | In re Carr, 38 Cal. App. 4th at 213-214, 45 Cal. Rptr. 2d at 36-37.

21 |     Assuming the creation of a liberty interest, it is clear that such interest does not

22 | require a noticed hearing with the parolee present.  15 CCR § 2535(c).  Rather, California law

23 | contemplates a record review.  And, since the liberty interest is derived from state law, the

24 | process due from a federal standpoint should not exceed that specified by statute.  The statutorily

25 | required notice to violent offenders of the discharge/retain decision, but not the non-violent

26 | offender, appears odd at best, but the regulations make no such distinction. § 2535(c) – notice is

1   to be given to all.  And, given defendants' acquiescence in the existence of a liberty interest, the

2   court will assume that plaintiff was entitled to notice as well.  *Defendants do not dispute the lack*

3   *of notice to plaintiff, and the court will assume this aspect of due process was violated.*

4        All agree that plaintiff had a right to administratively appeal from an adverse

5   discharge/retention decision.  See Erkenbrecher Declaration.  The court will therefore find for

6   purposes of this motion that a part of the liberty interest plaintiff possessed included such a right

7   to appeal.  *The lack of notice of the initial decision denied plaintiff the right to appeal.*

8        Plaintiff also alleges that he was entitled to be informed of all parole regulations,

9   rights and responsibilities.  No authority is cited for this proposition, and the court does not find

10  that federal due process required this education.  Moreover, plaintiff indicates that he knew of the

11  discharge/retain procedure.  Plaintiff Declaration at para. 4.

12       Finally, plaintiff alleges that the decision in his case was foreordained by the

13  Stinson memo issued on June 8, 2001(attached to the ErkenbrecherDeclaration).  Plaintiff

14  believes that the memo required that he be kept on parole regardless of any required review in the

15  matter.  If true, plaintiff would have alleged a due process violation in that presumably, the

16  review had to be based on "some evidence," a typical federal due process requirement for

17  administrative hearings.  See Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir.2003).

18       However, plaintiff is indisputably in error about the relevance of the memo.  This

19  memo addressed  procedures to be utilized when parole supervision was to be transferred to

20  another state, *and* if the review was to be performed in the next 60 days.  As defendants point

21  out, plaintiff's review was not due within 60 days at the time his parole supervision was

22  transferred to the State of Nevada.  Erkenbrecher Declaration.  The memo, even if actionable on

23  its terms, was not relevant to this case.

24       Thus, the issue would become whether there exists a remedy in this civil rights

25  case for the lack of notice and appeal in this administrative context.  However, defendants have

26  not moved on the basis of a non-cognizable remedy, and the court will assume that such exists.

1  See Siebert v. Severino, 256 F.3d 648, 655 (7th Cir. 2001); Weinfeld v. Whatcom County, 241

2  F.3d 746, 752 (9th Cir. 2001).

3         Defendants do seek to be excused from this lawsuit on the basis that they played

4  no part in the due process violations suffered by plaintiff, as have been defined above (notice of

5  decision and appeal).  The Erkenbrecher Declaration provides that none of the named defendants

6  had the duty to disseminate information to plaintiff.  And, the information at issue here was

7  dissemination of the notice of the decision and the right to appeal.  Although the declaration, in

8  its collective form is somewhat conclusory, the burden has shifted to plaintiff to raise a material

9  issue of fact that all, some, or one of the defendants had this duty.  Recognizing that no

10  respondeat superior liability per se exists against individual capacity defendants in a § 1983

11  action, see Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006), plaintiff has not supplied any

12  information from which the court could find that he has met his burden.  Nor has plaintiff

13  demonstrated by *facts* that any of the supervisorial persons named as defendants '" participated in

14  or directed the violations, or knew of the violations and failed to act to prevent them.'"  Id.

15  quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).  Plaintiff understands the lack of

16  respondeat superior liability and when supervisors can be held personally liable, as he briefs the

17  issue quite adequately in his opposition to the summary judgment motion.  However, his mere

18  conclusions that the supervisors failed to properly supervise or train their subordinates do not

19  stand in lieu of material facts presented on the issue.

20         Concerning plaintiff's allegations of a lack of due process at his parole revocation

21  hearing, again, plaintiff fails to present any evidence that any of the named defendants were

22  responsible for this alleged problem in any respect.  Plaintiff does not name the hearing officer as

23  a defendant, and in no way demonstrates that any of the named defendants had the authority to

24  intervene in, or conduct, the hearing, or that in any event, any of these defendants had notice of

25  \\\\\

26  \\\\\

1   the due process deficiencies alleged prior to their happening.[4]

2          As to plaintiff's medical care complaints which occurred after his parole was

3   revoked, plaintiff has in no way linked these defendants to his medical care.  Whether a lack of

4   due process in the parole discharge/revocation proceedings would have implicated the named

5   defendants for damages liability on a foreseeability basis is an interesting question; however, in

6   light of the findings above, it is also a moot question.  These defendants are surely not liable for

7   an Eighth Amendment violation after parole was revoked.

8          Therefore, summary judgment is properly granted to all defendants.[5]

9   CONCLUSION

10         Accordingly, IT IS HEREBY RECOMMENDED that the motion of defendants

11  for summary judgment be granted.

12         These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  \\\\\

19  \\\\\

20  \\\\\

21

22         [4]  Plaintiff's conclusory allegation that his wife desired to give exculpatory material to
    parole agent Erkenbrecher for use at the hearing, but Erkenbrecher informed plaintiff's wife that
23  these should be submitted at the hearing, does not explain why plaintiff could not have presented
    this material himself at the hearing, or otherwise have submitted it to the hearing officer.
24  Plaintiff has no due process right for parole agents to act as his representative or courier for
    parole revocation hearings.
25
        [5]  Plaintiff's equal protection claim is not described nor supported.  The court views this
26  theory as simply a conclusory add-on to the due process allegations.

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:    2/23/07

4                                                          /s/ Gregory G. Hollows

5                                                          _____
                                                          GREGORY G. HOLLOWS
6  GGH:ggh:035                                            UNITED STATES MAGISTRATE JUDGE
   O'Keeffe1695.sj.wpd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26