1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEMIAN TREVOR O'KEEFE,

11          Plaintiff,              No. CIV S-04-1695 WBS GGH PS

12      vs.

13   EDWARD S. ALAMEIDA, et al.,        ORDER AND

14          Defendants.            FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. §

18   1983.  Pending before the court is defendant's summary judgment motion filed August 28, 2009.

19   Also pending is plaintiff's September 16, 2009, motion for leave to conduct further discovery.

20   For the following reasons, the court recommends that defendant's summary judgment motion be

21   denied.

22   II.  Motion for Leave to Conduct Additional Discovery

23          On September 14, 2009, plaintiff filed an opposition to defendant's summary

24   judgment motion.  On September 16, 2009, plaintiff filed a motion for leave to conduct

25   additional discovery pursuant to Fed. R. Civ. P. 56(f).

26   \\\\\

1

1    Fed. R. Civ. P. 56(f) provides,

2    If a party opposing the motion [for summary judgment] shows by affidavit that,
     for specified reasons, it cannot present facts essential to justify its opposition, the
3    court may:

4    (1)  deny the motion;
     (2) order a continuance...; or
5    (3) issue any other just order.

6    Fed. R. Civ. P. 56(f).

7    As will be discussed below, defendants are not entitled to summary judgment as a

8    matter of law.  The further discovery plaintiff seeks to conduct, as described in his motion, is not

9    relevant to the legal issues and would not impact the outcome.  Accordingly, the motion for leave

10   to conduct additional discovery is denied.

11   III.  Summary Judgment Standards

12   Summary judgment is appropriate when it is demonstrated that there exists "no

13   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

14   matter of law."  Fed. R. Civ. P. 56(c).

15   Under summary judgment practice, the moving party
     always bears the initial responsibility of informing the district court
16   of the basis for its motion, and identifying those portions of "the
     pleadings, depositions, answers to interrogatories, and admissions
17   on file, together with the affidavits, if any," which it believes
     demonstrate the absence of a genuine issue of material fact.

18

19   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

20   P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

21   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

22   depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

23   should be entered, after adequate time for discovery and upon motion, against a party who fails to

24   make a showing sufficient to establish the existence of an element essential to that party's case,

25   and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

26   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

2

1    necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

2    should be granted, "so long as whatever is before the district court demonstrates that the standard

3    for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

4    2553.

5            If the moving party meets its initial responsibility, the burden then shifts to the

6    opposing party to establish that a genuine issue as to any material fact actually does exist. See

7    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

8    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

9    not rely upon the allegations or denials of its pleadings but is required to tender evidence of

10   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

11   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

12   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

13   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

14   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

15   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

16   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

17   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

18           In the endeavor to establish the existence of a factual dispute, the opposing party

19   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

20   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

21   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

22   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

23   genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

24   56(e) advisory committee's note on 1963 amendments).

25           In resolving the summary judgment motion, the court examines the pleadings,

26   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3

1    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

2    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

3    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

4    at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

5    obligation to produce a factual predicate from which the inference may be drawn.  See Richards

6    v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

7    (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

8    simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

9    taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

10   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

11   IV.  Discussion

12          On April 10, 2007, the district court granted summary judgment to defendants and

13   judgment was entered.  On July 29, 2009, the Ninth Circuit Court of Appeals affirmed in part,

14   vacated in part and remanded for further proceedings.  In particular, the Ninth Circuit remanded

15   this action for further consideration of plaintiff's claim that defendant Erkenbrecher failed to

16   notify him that he had been retained on parole.  The district court had granted summary judgment

17   to defendant Erkenbrecher as to this claim on grounds that plaintiff had not demonstrated that she

18   was personally involved in the alleged deprivation.  The Ninth Circuit found that the evidence,

19   construed in the light most favorable to plaintiff demonstrated defendant Erkenbrecher's

20   involvement.

21          In the pending summary judgment motion, defendant Erkenbrecher argues that she

22   is entitled to qualified immunity.  In resolving a claim for qualified immunity the court addresses

23   two questions: (1) whether the facts, when taken in the light most favorable to plaintiff,

24   demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable

25   officer could have believed that his conduct was lawful, in light of clearly established law and the

26   information the officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).

1   Although the Supreme Court at one time mandated that lower courts consider these two

2   questions in the order just presented, more recently the Supreme Court announced that it is

3   within the lower courts' discretion to address these questions in the order that makes the most

4   sense given the circumstances of the case.  Pearson v. Callahan, -- U.S. ----, 129 S.Ct. 808, ---

5   L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

6           A.  Undisputed Facts

7           The following facts are undisputed.  On February 4, 2001, plaintiff was

8   discharged from a three year prison sentence to a three year parole term.  Plaintiff had been

9   serving a prison sentence after being convicted of "false written/oral statement."  Opposition, p.

10  34 of 129.  Plaintiff alleges that he was found guilty of four counts of Worker's Compensation

11  fraud.  Id., p. 102 of 129.  Plaintiff alleges that he exaggerated the extent of his disability in order

12  to obtain medical and disability benefits.  Id

13          Defendant Erkenbrecher was plaintiff's parole agent from February 4, 2001, to

14  August 13, 2003.  Plaintiff was permitted to serve his parole term in Nevada under the Interstate

15  Compact and he also had a Nevada parole officer.

16          On January 28, 2002, defendant Erkenbrecher conducted a parole discharge

17  review pursuant to Cal. Penal Code § 3001.  Defendant Erkenbrecher recommended to the Board

18  of Prison Terms, now the Board of Parole Hearings (BPH), that plaintiff not be discharged early

19  from his three year parole term.

20          On February 1, 2002, the BPH conducted a discharge review under Cal. Penal

21  Code § 3001 which included a review of defendant's recommendation, and elected to retain

22  plaintiff on parole.

23          On January 28, 2003, defendant Erkenbrecher conducted another parole discharge

24  review under Cal. Penal Code § 3001.  Defendant recommended to the BPH that plaintiff not be

25  discharged early from his three year parole term.

26  \\\\\

1    On February 3, 2003, the BPH conducted a discharge review, which included

2  defendant's recommendation, and elected to retain plaintiff on parole.

3    On August 4, 2003, plaintiff's parole was revoked.

4    On January 28, 2004, the BPH received an appeal from plaintiff challenging the

5  parole revocation decision and asserting that he had discharged off parole because the BPH had

6  failed to retain him on parole under Cal. Penal Code § 3001.  In response to the appeal, the BPH

7  ordered that plaintiff be provided with a written copy of the February 1, 2002, and February 3,

8  2003, decisions to retain him on parole, and that he be allowed to appeal those decisions.

9    B.  Analysis

10    Plaintiff alleges that defendant Erkenbrecher twice failed to give him notice that

11  he had been retained on parole.  Without this notice, plaintiff argues that he could not

12  administratively appeal the decisions.  Whether defendant Erkenbrecher sent this notice to

13  plaintiff is disputed as this defendant asserts only that it was her custom and practice to send such

14  notices, and that she "believes" she followed her custom and practice.  There are no records

15  showing service of the notice.  The regulations governing the discharge/retain process followed

16  in this case is adequately set forth in In re Carr, 38 Cal. App. 4th 215, 45 Cal. Rptr. 2d 34 (1995):

17  The Operations Manual (hereafter OM) for the Department of
Corrections reflects the actual practices of the PHD. It requires that
18  a "Discharge Review Report" be prepared at least 20 days before
the end of a parolee's first year of continuous parole. (OM, §
19  81080.1.1.) In this report, the parole agent reviews relevant
information and recommends discharge from or retention on
20  parole. (OM, § 81080.1.2.) The report must then go to a unit
supervisor, who decides to discharge or retain.
21
If the supervisor decides to discharge, the review process ends and
22  discharge becomes effective "30 days following completion of one year of
continuous parole," and the "[p]arolee will discharge by action of law on date
23  specified." (OM, § 81080.1.2, emphasis added; see OM, § 81081.1.1 ["By law" a
parolee is discharged if the PHD does not order retention within 30 days after first
24  continuous year on parole.].) However, if the parole agent's report or the unit
supervisor recommends retention, the matter is submitted to the parole
25  administrator for a decision, which again must be made within the 30-day period.
( Ibid.)
26

1    At the outset, under the governing California statute, the court finds that plaintiff

2 was entitled to notice of the parole retention hearing decisions.  But for inconsequential sections

3 underlined below, in 2002, Cal. Penal Code § 3001 provided, in relevant part,

4

5    (a) Notwithstanding any other provision of law, when any person referred to in
     paragraph (1) of subdivision (b) of Section 3000 who was not imprisoned for
     committing a violent felony, as defined in subdivision (c) of Section 667.5, has

6    been released on parole from the state prison, and has been on parole continuously
     for one year since release from confinement, within 30 days, that person shall be

7    discharged from parole, unless the Department of Corrections recommends to the
     Board of Prison Terms that the person be retained on parole and the board, for

8    good cause, determines that the person will be retained.  Notwithstanding any
     other provision of law, when any person referred to in paragraph (1) of

9    subdivision (b) of Section 3000 who was imprisoned for committing a violent
     felony as defined in subdivision (c) of Section 667.5, has been released on parole

10   from the state prison *** for a period not exceeding three years and has been on
     parole continuously for two years since release from confinement, or has been

11   released on parole from the state prison for a period not exceeding five years and
     has been on parole continuously for three years since release from that

12   confinement, the department shall discharge, within 30 days, that person from
     parole, unless the department recommends to the board that the person be retained

13   on parole and the board, for good cause, determines that the person will be
     retained.  The board shall make a written record of its determination and the

14   department shall transmit a copy thereof to the parolee.

15 Cal. Penal Code § 3001 (2003).

16    The statute is somewhat grammatically vague as to whether the notice

17 requirements apply to parolees convicted of non-violent offenses, like plaintiff.  However, by

18 California regulation, 15 CCR 2535(c), an omnibus notice requirement to parolees convicted of

19 non-violent offenses is mandated.  See In re Carr, 38 Cal.App. 4th (209) (1995), In re Roa, 1

20 Cal.4th 724, 3 Cal.Rptr.2d 1 (1991), and In re Ruzicka, 230 Cal.App.3d 595 (1991).

21    Also, interestingly, the statute itself, § 3001, gives no right of review to parole

22 retention decisions; it merely specifies a time for the next parole retention review.  Nevertheless,

23 the above cited regulation does give this right of review of parole retention decisions to parolees.

24 Neither the statute nor regulation specifies who in the "department" specifically shall give the

25 notice of the decision to be appealed, but the parole agent in this case declares that it is her

26 "custom and practice" to send out the notice.  For purposes of this motion, the undersigned

7

1    considers her to be the "department."

2           For the second time in as many dispositive motions, defendant assumes the

3    existence of a liberty interest in being able to appeal a retention on parole.[1]  The undersigned has

4    significant doubt, but will not adjudicate what defendant has assumed.[2]

5    _____

6       [1] State law does not give the parolee a right to appear or submit any information for the
     initial parole retention determination,  15 CCR 2535(c), so there can be no liberty interest in the
7    underlying parole retention determination itself.

8       [2] The undersigned notes, however, that the existence of a federal liberty interest is
     dubious.
9        A protected liberty interest may arise from either the Due Process Clause itself or from
     state laws. Board of Pardons v. Allen, 482 U.S. 369, 373, 107 S.Ct. 2415 (1987).
10      A federally recognized liberty interest only arises from the denial or misapplication of
     state procedures that results in the deprivation of a substantive right. Ceja v. Stewart, 97 F.3d
11   1246, 1252 (9th Cir.1996);  Bonin v. Calderon, 77 F.3d 1155, 1161 (9th Cir.) ("[f]ederal habeas
     corpus relief does not lie for errors of state law, unless the error amounts to a deprivation of the
     petitioner's constitutional rights.").
12      There is a distinction between state-created procedures and the substantive liberty
     interests those procedures are meant to protect. Olim v. Wakinekona, 461 U.S. 238, 250, 103
13   S.Ct. 1741, 1748 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a
     substantive interest to which the individual has a legitimate claim of entitlement."). Only the
14   denial or misapplication of state procedures that results in the deprivation of a significant,
     substantive right will implicate a federally recognized liberty interest. See Olim, 461 U.S. at
15   250-51, 103 S.Ct. at 1748 (state procedures that do not protect substantive rights do not create
     independent substantive rights). Filing an administrative grievance is not the equivalent of filing
16   an appeal from a criminal conviction.
        The seemingly warranted conclusion that state law does not create a liberty interest in
17   filing an administrative grievance is bolstered by the Supreme Court's disapproval of the
     "misapplication of state law" holding of Blair v. McCarthy, 881 F.2d 602 (9th Cir. 1989).
18      In Blair v. McCarthy, supra, a prisoner filed a habeas petition arguing that he had not
     been informed of a mandatory parole term in violation of state law.  The petitioner argued that he
19   would not have plead guilty had he been aware of the mandatory parole term.  881 F.2d at 603.
     The Ninth Circuit held that once a habeas petitioner proves a violation of state law by failing to
20   inform him of a particular consequence of his plea, he should be granted collateral relief if he
     shows that there is a reasonable probability that, but for the state court's error, he would not have
21   pleaded guilty.  Id. at 604.  The Ninth Circuit went on to grant the petitioner habeas relief.  Id.
        In Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475 (1991), the Supreme Court
22   disapproved of the "misapplication of state law" holding of Blair.  There, the Supreme Court
     stated, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction
23   violated the Constitution, laws or treaties of the United States."  502 U.S. at 68, 112 S.Ct. 475.
        In this regard, we observe that the Ninth Circuit reached a similar result in Blair v.
24   McCarthy, 881 F.2d 602 (1989), cert. granted, 498 U.S. 807, 111 S.Ct. 39, 112 L.Ed.2d 16,
     vacated as moot and remanded, 498 U.S. 954, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990). In that
25   case, the Court of Appeals based its grant of habeas relief solely on a violation of state law that
     prejudiced the defendant. Blair v. McCarthy, supra, at 603-604. As our discussion above makes
26   clear, such state-law violations provide no basis for federal habeas relief.

                                                    8

1        Assuming the existence of a liberty interest, defendant asserts:

2        Here, it is undisputed that after filing an administrative grievance. Plaintiff was
         [belatedly] given a written copy of the decisions to retain him on parole and [a
3        belated] opportunity to appeal those decision.  (Exhibit 2G).  Thus, the alleged
         error was corrected and Plaintiff's due process rights "preserved" under both
4        California and Ninth Circuit law.  Therefore, under the only law addressing a
         parolee's due process rights regarding parole discharge decisions, Plaintiff
5        received Due Process.  Agent Erkenbrecher is thus entitled to qualified immunity
         because Plaintiff was afforded all the process due him under the only established
6        law on the due process requirements afforded parolees under Penal Code Section
         3001.

7

8    Summary Judgment briefing at 6.

9        With due respect, defendant's assertions are a non-sequitur.  First, defendant

10   assumes that the timing of the due process is irrelevant to the constitutional issue, i.e., that

11   belated due process is as good as timely due process as long as the plaintiff ultimately lost the

12   appeal.  Defendant has mistaken the damages consequences of a belated upholding of the parole

13   retention (no compensatory damages, only nominal damages)[3] for a belief that no violation of

14   due process took place at all.  Next, defendant asserts qualified immunity because no

15   constitutional violation took place.  However, due process has *always* contained the concept that

16   one has the right to a meaningful hearing at a *meaningful time.*  Schneider v. San Diego, 28 F.3d

17   89, 92 (9th Cir. 1994).  The meaningful time in this case was the right to appeal the retention

18   decision proximate to the making of the decision itself.  To hold, as defendant would, that the

19   right to appeal a parole retention is meaningful from a timeliness standpoint no matter if the

20   parolee is not given notice of his right to appeal retention for a time up to and including the

21

22   Id.

23       While Estelle v. McGuire and Blair v. McCarthy involved habeas corpus petitions, the
     Supreme Court's rejection of the "misapplication of state law" holding of Blair is equally
24   applicable to the claims raised in the instant civil rights action.

25       Finally, as seen from footnote 1, it is difficult to conceive that a liberty interest to appeal
     exists when the underlying determination process would not give rise to a liberty interest.

26       [3] See Schneider v. County of San Diego, 285 F.3d 784, 795 (9th Cir. 2002).

9

1   entirety of a lengthy parole period, is to hold that the right to appeal an earlier parole retention

2   decision is entirely meaningless.  Again, assuming existence of a liberty interest, no reasonable

3   parole official could conclude that the law justified such a meaningless appeal, or that lack of

4   notice was "just the breaks," i.e., non-actionable.

5           Thus, under the well known standards of qualified immunity – was a

6   constitutional right violated of which a reasonable official would have known, defendant

7   Erkenbrecher is not entitled to claim such.

8           As noted above, plaintiff cannot claim compensatory damages.  At best, after

9   further efforts of the parties, and bringing in a jury to hear the matter, and perhaps with further

10  appeals, plaintiff can recover one or two dollars as nominal damages.  It seems perverse in these

11  times of budget deficits and cutting of social programs that the amount of judicial resources and

12  tax payer dollars may well require an expenditure thousands of times in excess of the potential

13  recovery.  However, the law requires such, and practicality does not enter into the equation.

14  _Conclusion_

15          Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to conduct

16  additional discovery (no. 60) is denied;

17          IT IS HEREBY RECOMMENDED that defendant's motion for summary

18  judgment (no. 57) be denied.

19          These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

21  one days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within seven days after service of the objections.  The parties are

25  \\\\\

26  \\\\\

10

1    advised that failure to file objections within the specified time may waive the right to appeal the

2    District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED:   January 14, 2010

4

5                                                   /s/ Gregory G. Hollows

6                                                   _____
                                                    UNITED STATES MAGISTRATE JUDGE

7

8    oke1695.sj(s)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26