1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEMIAN TREVOR O'KEEFFE,

11          Plaintiff,                        No. CIV S-04-1695 GGH PS

12       vs.

13   EDWARD S. ALAMEIDA, et al.,

14          Defendants.                       ORDER

15   _____/

16   I.  Introduction

17          Plaintiff is a former state prisoner proceeding pro se with a civil rights action

18   pursuant to 42 U.S.C. § 1983.  This action is proceeding on the original complaint.[1]  On April 10,

19   2007, the district judge adopted findings and recommendations that granted defendants' motion

20   for summary judgment.  Doc. 41.  On July 7, 2009, the United States Court of Appeals for the

21   Ninth Circuit affirmed the judgment as to all defendants except Karla Erkenbrecher, plaintiff's

22   former parole agent, and remanded to the district court.  Doc. 48.  At the pretrial hearing on May

23   19, 2011, both parties consented to the undersigned's jurisdiction for all further proceedings,

24   including trial and entry of final judgment.  Doc. 92.  The remaining issue is plaintiff's claim that

25

26          [1] The amended complaint was stricken by order on October 12, 2005.

1    defendant Erkenbrecher violated his federal right to due process by failing to notify plaintiff of

2    the Board of Prison Terms' (now the Board of Parole Hearings, hereinafter "BPH") decisions to

3    retain him on parole on February 1, 2002 and February 3, 2003, respectively, so plaintiff could

4    file an administrative appeal.

5             On June 1, 2011, the court ordered plaintiff to file a motion for summary

6    judgment and defendant to oppose and file a cross motion for summary regarding whether, as a

7    matter of law, defendant's alleged failure to notify plaintiff of his retention on parole violated his

8    federal due process rights; and if so, whether he is entitled to more than nominal damages for this

9    violation.  The briefing was to specifically address:

10            1.  Whether plaintiff had a federally protected liberty interest in the right to

11   administratively appeal from an adverse discharge/retention decision.

12            2.  If plaintiff had a federally protected liberty interest in the right to appeal, what

13   process was due?

14            3.  Assuming that plaintiff had a federally protected liberty interest in the right to

15   appeal, and that due process included timely notice of decision, whether plaintiff must show that

16   the BPH would have reversed its decision on appeal, in order to be entitled to more than nominal

17   damages.  See Carey v. Piphus, 42 U.S. 247, 263, 98 S.Ct. 1042, 1052 (1978) ("[T]he injury

18   caused by a justified deprivation, including distress, is not properly compensable under § 1983."

19   Thus, plaintiff must "convince the trier of fact that he actually suffered distress because of the

20   denial of procedural due process itself."); County of Monroe, Florida v. U.S. Dept. of Labor, 690

21   F.2d 1359, 1363 (11th Cir. 1982) (same); but see Patterson v. Coughlin, 905 F.2d 564, 568-570

22   (7th Cir. 1990) (where a denial of due process has been followed by a liberty deprivation, burden

23   shifts to the state to prove that plaintiff would have suffered deprivation even if due process rights

24   had been respected).

25            4.  Assuming plaintiff is entitled to more than nominal damages for due process

26   violation, what damages is he entitled to for:

1             a. the period between defendant's alleged failure to notify and April 23,

2                2003, when plaintiff was arrested for alleged credit card fraud; and

3             b.  all events subsequent to plaintiff's arrest on April 23, 2003; including

4             c. plaintiff's alleged inadequate medical care in prison.[2]

5        The parties have timely filed their motions and a hearing was held before the court

6 on August 25, 2011.  Plaintiff appeared pro se and Monica Anderson appeared for defendant.  For

7 the reasons that follow, defendant's cross motion for summary judgment is granted and this case

8 is closed.

9 II.  <u>Motion for Summary Judgment</u>

10        <u>Legal Standard for Summary Judgment</u>

11        Summary judgment is appropriate when it is demonstrated that there exists "no

12 genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

13 law."  Fed. R. Civ. P. 56(c).

14        Under summary judgment practice, the moving party

15        always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the

16        pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes

17        demonstrate the absence of a genuine issue of material fact.

18 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P.

19 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue,

20 a summary judgment motion may properly be made in reliance solely on the 'pleadings,

21 depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment

22 should be entered, after adequate time for discovery and upon motion, against a party who fails to

23 make a showing sufficient to establish the existence of an element essential to that party's case,

24 and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.

25

26    [2] The issue is at what point plaintiff's claimed damages become "remote" from the initial event in the causal chain, here defendant's alleged failure to notify plaintiff of the BPH decisions.

1   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

2   necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

3   should be granted, "so long as whatever is before the district court demonstrates that the standard

4   for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

5   2553.

6          If the moving party meets its initial responsibility, the burden then shifts to the

7   opposing party to establish that a genuine issue as to any material fact actually does exist. See

8   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

9   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not

10  rely upon the allegations or denials of its pleadings but is required to tender evidence of specific

11  facts in the form of affidavits, and/or admissible discovery material, in support of its contention

12  that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at

13  1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact

14  that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

15  Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

16  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

17  evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v.

18  Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19         In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

25  56(e) advisory committee's note on 1963 amendments).

26  ////

1          In resolving the summary judgment motion, the court examines the pleadings,

2    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3    Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477

4    U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court

5    must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at

6    1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

7    obligation to produce a factual predicate from which the inference may be drawn.  See Richards v.

8    Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

9    Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

10   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

11   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

13          Undisputed Facts

14          The following of defendant's undisputed facts (DUF) are either not disputed by

15   plaintiff, or following the court's review of the evidence submitted, have been deemed

16   undisputed:

17          On February 4, 2001, plaintiff was discharged from a four year prison sentence to a

18   three year parole term.  DUF # 1, 2.  Plaintiff had been serving a prison sentence after being

19   convicted of giving a false written/oral statement.  In June 2001, plaintiff was transferred at his

20   request to Nevada parole under the Interstate Parole Compact.  DUF # 3.  When a parolee such as

21   plaintiff is supervised by another state under the Interstate Parole Compact, all communications

22   between the supervising/receiving state (Nevada) and the sending state (California) go through the

23   Interstate Parole Office.  DUF #6.  The supervising/receiving state (Nevada) is responsible for

24   generating yearly progress reports and providing it to the sending state (California).  Id.

25          The BPH in California relies solely on the supervising parole agent from the

26   receiving state (Nevada) to make communications to the parolee regarding notice of parole

1  retention decisions, as the receiving state has assumed supervision.  DUF #8.  Nevada parole

2  agents notify parolees of any change in their expiration status either in person, at an office visit, by

3  telephone, or by mail.  DUF #24.

4        Defendant Erkenbrecher was plaintiff's California parole agent from February 4,

5  2001, to August 13, 2003, under the Interstate Parole Compact.  DUF #9.  Her responsibilities

6  included maintaining administrative control of California interstate parolees under supervision in

7  other states and assisting California Parole Agents in processing reports on California parolees

8  confined in other states.  Id.  Erkenbrecher was the only parole agent responsible for supervising

9  California parolees in Nevada, approximately 350 in 2001 - 2003.  DUF #11.  She spoke with

10  Nevada parole weekly and discussed issues raised by Nevada parole and also requested yearly

11  reviews for parolees supervised in Nevada.  Id.  She had no direct contact with plaintiff while he

12  was on parole in Nevada.  DUF #13.  It is Erkenbrecher's custom and practice to notify parolees

13  assigned to her caseload of decisions of the BPH to retain the parolee on parole.  DUF #14.  She

14  notifies them by mail.  Id.

15        On February 1, 2002, the BPH conducted a discharge review under Cal. Penal

16  Code § 3001 which included a review of defendant's recommendation of parole retention, and

17  elected to retain plaintiff on parole.  DUF #19.  On February 11, 2002, a notation in the Nevada

18  parole database shows that plaintiff was retained on parole.  DUF #29.

19        On March 7, 2002, plaintiff asked his Nevada parole agent about traveling to

20  Hawaii for three days for a job.  DUF #30.  On June 4, 2002, plaintiff stated to his Nevada parole

21  agent that he was going to send California an appeal form due to the state's lack of filing an

22  annual progress report.  DUF #31.  On September 30, 2002, it was noted in the Nevada parole

23  database that plaintiff should remain on the minimum level of supervision for now but he is very

24  deceptive and manipulative so the parole agent should keep an eye on him.  DUF #32.  On

25  January 14, 2003, plaintiff was informed not to miss any more appointments otherwise he would

26  be placed on weekly reporting.  DUF #35.  On January 27, 2003, it was noted that plaintiff was

1   still acting manipulative and giving his parole agent a hard time on issues.  DUF #36.

2            On February 3, 2003, the BPH conducted a discharge review, which included

3   defendant's recommendation of parole retention, and elected to retain plaintiff on parole.  DUF

4   #20.  On March 3, 2003, a notation in the Nevada parole database shows that plaintiff was

5   retained on parole.  DUF #37.

6            On April 23, 2003, a warrant was issued for plaintiff's arrest for credit card fraud

7   in the State of Nevada.  DUF #39.  On August 4, 2003, plaintiff's parole was revoked.  DUF #39.

8   Plaintiff appealed the revocation and argued that he had not been allowed to appeal the decisions

9   to retain him on parole in 2002 and 2003.  Doc. 57, Exh. 2G.   Plaintiff was provided with copies

10  of the BPH's actions retaining him on parole for 2002 and 2003 and provided an opportunity to

11  appeal the retention.  Id.  Plaintiff chose not to appeal the retentions and instead filed the instant

12  action.  Plaintiff's statement: August 25, 2011, court hearing.

13       Disputed Facts

14            Defendant Erkenbrecher does not specifically remember or have a notation that she

15  sent notices to plaintiff of his retention on parole in 2002 and 2003, though it is her custom and

16  practice to send such notices.  Plaintiff states that he did not receive the retention notices.

17       Liberty Interest

18            Legal Standard

19            The Due Process Clause of the Fourteenth Amendment provides that no state shall

20  "deprive any person of life, liberty, or property, without due process of law...."  U.S. Const.

21  amend. XIV, § 1.  The analysis of due process claims proceeds in two steps.  "[T]he first asks

22  whether there exists a liberty or property interest which has been interfered with by the State; the

23  second examines whether the procedures attendant upon that deprivation were constitutionally

24  sufficient."  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989) (citation

25  omitted).  "A liberty interest may arise from either of two sources: the due process clause itself or

26  state law."  Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir. 1986).

1    It has been argued that the Ninth Circuit's line of cases finding a liberty interest

2    existed from the mandatory language of the statute has been curtailed by the United States

3    Supreme Court's decision in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995).  Yet, the

4    Ninth Circuit has "since held that Sandin's holding was limited to 'the separate but related

5    question of when due process liberty interests are created by internal prison regulations.'

6    [citation].  Accordingly, we continue to apply the 'mandatory language' rule set forth in

7    Greenholtz and Allen in order to determine whether [the state's] statutory scheme creates a liberty

8    interest in early release into community custody." Carver v. Lehman, 558 F.3d 869, 873 n. 5 (9th

9    Cir. 2009) (citing McQuillion v. Duncan, 306 F.3d 895, 902-03 (9th Cir. 2002) and Sass v. Cal.

10   Bd. of Prison Terms, 461 F.3d 1123 at 1127 n. 3 (9th Cir. 2006), in applying mandatory language

11   rule to find no liberty interest for early release into community under Washington statute)).[3]

12        Discussion

13        At the time pertinent to plaintiff's complaint, a California parolee could have been

14   discharged from his parole short of its originally expected duration.[4]  If a parolee is retained on

15   parole, California Penal Code § 3001 provides, "[t]he board shall make a written record of its

16   determination and the department shall transmit a copy thereof to the parolee." Id.  The California

17   Code of Regulations provides a parolee the right to appeal a retention decision, but nothing else:

18

19        [3] Plaintiff would fare no better under the standard in Sandin, as he cannot demonstrate an
     atypical and significant hardship being placed on parole and then remaining on parole.

20        [4] "(a) Notwithstanding any other provision of law, when any person referred to in
     subdivision (a) of Section 3000 who was not imprisoned for committing a violent felony, as
21   defined in subdivision (c) of Section 667.5, has been released on parole from the state prison, and
     has been on parole continuously for one year since release from confinement, within 30 days, that
22   person shall be discharged from parole, unless the Department of Corrections determines, for
     good cause, that the person will be retained on parole. Notwithstanding any other provision of
23   law, when any person referred to in subdivision (a) of Section 3000 who was imprisoned for
     committing a violent felony, as defined in subdivision (c) of Section 667.5, has been released on
24   parole from the state prison, and has been on parole continuously for two years since release from
     confinement, the department shall, within 30 days, discharge that person from parole, unless the
25   department for good cause, determines that the person will be retained on parole. The department
     shall make a written record of its determination and transmit a copy thereof to the parolee."

26

1
2
3
4

> The prisoner does not have a right to a personal appearance during the review.  The parolee shall receive a copy of the parole hearings division's decision, including the reasons for a decision not to discharge the parolee.  The parolee may appeal a refusal to discharge as provided in sections 3901.5.1-.6.  If the parole hearings division does not discharge the parolee, it shall review the case annually thereafter until discharge. Subsequent reviews shall be performed as provided in this section.

5  California Code of Regulations, Title XV, Section 3901.13.1(b)(c).[5]

6        California Code of Regulations, Title XV section 3901.5.1-.6 discusses the

7  procedures of appealing an adverse decision, yet is not relevant to this case as plaintiff did not file

8  an appeal even when provided the opportunity.

9        In the instant case plaintiff argues that by not being notified of the parole retention

10  decision, his due process rights were violated as he was unable to file an appeal and he notes there

11  is mandatory language that the retention decision shall be provided to the parolee.[6]

12        In <u>Carver v. Lehman</u>, 558 F.3d 869 (9th Cir. 2009), the Ninth Circuit stated:

13
14
15

> In order to create a constitutionally protected liberty interest, a statute must contain " 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." <u>Thompson</u>, 490 U.S. at 463, 109 S.Ct. 1904 (quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).

16  <u>Id</u>. at 874-75.

17        However, in discussing the language of the statute at issue in <u>Carver</u>, the Ninth

18  Circuit emphasized:

19
20
21
22
23

> The only 'explicitly mandatory language' in the [statute] concerns a procedural right to an individualized determination based on the merits of a proposed release plan.  That language cannot create a "liberty interest" within the meaning of the Fourteenth Amendment because "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause" of the Fourteenth Amendment. <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250-51 n. 12, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>see also</u> <u>In re Cashaw</u>, 123 Wash.2d 138, 866 P.2d 8, 12 (1994) ( "The United States Supreme Court and the Ninth Circuit have clearly held

24      [5] This regulation has since been repealed.

25
26      [6] There are no tenable arguments that the due process clause itself creates a liberty interest in the ability to appeal parole retention, therefore the undersigned will focus on the creation of a liberty interest through state law.

1     that procedural laws do not create liberty interests; only substantive laws can create these interests.")

2  Id. at 875.

3       Before reaching plaintiff's precise argument, the court must analyze the governing

4  statute, § 3001, as a whole to see if it creates a substantive liberty interest for the process plaintiff

5  contends he was denied.   Although § 3001 contains mandatory discharge from parole language, it

6  is not preceded by specific substantive predicates which guide the decision.  As shown in footnote

7  4, the decision to retain a parolee on parole is a decision within the unfettered, general "good

8  cause" discretion of the parole agency.  The "mandatory" nature of the discharge comes about

9  only by operation of the calendar and the lack of a decision to retain.  A parolee is not even given

10 the procedural right  to show up or submit any evidence in connection with the determination to

11 retain.  The undersigned cannot find that such language creates a substantive liberty interest.  See

12 Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747 (1983) ("[A] State creates a

13 protected liberty interest by placing substantive limitations on official discretion"); Hewitt v.

14 Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871 (1983) (observing that the statute in question

15 provided "explicitly mandatory language in connection with requiring *specific substantive*

16 *predicates*") (emphasis added).   Nor has any federal or state court to the undersigned's

17 knowledge held (as opposed to assumed) that § 3001 creates a liberty interest.[7]

18       Also, the type of "benefit" at issue in the initial decision regarding parole retention

19 is hardly of the significance of a benefit that would give rise to a liberty interest.  Plaintiff did not

20 really lose much when retained on parole.  Although remaining subject to supervision, he was not

21 incarcerated.  For most intents and purposes, he could go about his daily business unconstrained.

22 The decision here did not involve a process which would determine whether plaintiff could be

23 ////

24

25       [7] The undersigned's previous opinion in O'Keefe v. Alameida, 2007 WL 586911 (E.D.
   Cal. 2007) assumed the point.  Whether a liberty interest was created by § 3001 was not at issue
26 on the first appeal.

1    placed on parole in the first instance.[8]

2          Thus, the further mandatory statutory language regarding notification of the

3    decision pressed by plaintiff, giving  parolees required notice of their parole retention *after the*

4    *fact of the initial decision*, in order to have the opportunity to appeal the decision is merely a

5    mandatory procedural right not underlayed by a substantive liberty interest.  As a procedural right

6    only, as set forth in Carver, it does not dictate a particular outcome regarding the appeal.

7    Therefore, the outcome here is also similar to that of  Carver,– plaintiff's expectation of receiving

8    notification/process does not equate to a liberty interest protected by the due process clause.

9          Because no liberty interest existed for the deprivation plaintiff complains of, the

10    "right" to timely appeal a decision to retain plaintiff on parole, he has no federal right to enforce.

11    The court need not go any further in its analysis of the various questions submitted previously

12    assuming that a liberty interest existed.  There being no other claims at issue in this long running

13    case, summary judgment should be awarded to defendant.[9]

14    ////

15    ////

16    ////

17    ////

18    _____

19        [8] In a related vein, it is instructive that California appellate courts have now held that the appropriate remedy for a failure to provide written notice of parole retention is to provide the parolee an opportunity to pursue an administrative appeal.  In re Stone, 197 Cal.App.4th 746

20    (2011); People v. Jack, 60 Cal.App.4th 1129 (1998).  The facial injury plaintiff allegedly suffered by not receiving his retention notices has already been remedied, as he was provided an

21    opportunity to later appeal the retention, albeit tardily.  By not taking advantage of that opportunity, plaintiff deprived the court of ever being apprised about whether the appeal would

22    have been granted, and hence whether plaintiff suffered any injury whatsoever by his lack of notification.

23        [9] The First Amended complaint contained repetitive claims for lack of due process.  The

24    nine claims listed therein also plead the alleged consequences which occurred to plaintiff as a result of not receiving due process and plaintiff's desired relief . Although several federal

25    statutes and the Constitution were listed in the additional "claims" therein, it is clear that the only claim for federal law violation was one of a lack of due process in not receiving notice that he

26    had been retained on parole.  No claims under state law were made.

1        Conclusion

2        Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for summary

3  judgment (Doc. 94) is denied, defendant's cross motion for summary judgment (Doc. 96) is

4  granted and this case is closed.

5  DATED: September 28, 2011

6                                    /s/ Gregory G. Hollows
                                  UNITED STATES MAGISTRATE JUDGE

7
   GGH: AB
8  okee1695.sj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26